Joseph J. Kunzeman, J.
In this class action seeking to permanently enjoin defendant Walsh as Administrator of the Housing and Development Administration from issuing interim maximum base rent orders (hereinafter MBR orders) and defendant Region Holding Corp. and all other landlords similarly situated from prosecuting eviction proceedings based on nonpayment of interim increases, plaintiff moves for a temporary injunction. By a stipulation of the parties in open court, Dicmac Holding Co., which owns and operates a rent-controlled *971 apartment house in this county, intervened as party defendant and cross-moves to dismiss the complaint.
This action involves Local Law No. 30 of the Local Laws of 1970 of the City of New York approved on July 10, 1970, which provided for the establishment of a system of rent control in which building rents (called maximum base rents, or MBEs) reflect the costs of properly operating, maintaining, and financing buildings. MBR orders were to be issued, to landlords who complied with the requirements of the law, by January 1, 1972. The law set up a complex method of computing MBRs, but limited any increase to 7%%. The law is administered by defendant Walsh as Administrator of the Housing and Development Administration of New York City. However, by January 1, 1972, most MBR orders had not been issued. Thus, one Benson Realty Corp. commenced a class action in the Supreme Court, New York County, against Albert A. Walsh and others, to direct the issuance of MBR orders or, in the alternative, to permit petitioner to immediately charge and collect an additional 7%% of the then existing rentals. By decision dated May 26, 1972, Mr. Justice Fino granted the application and judgment was entered on June 2, 1972. That judgment directed respondents to issue outstanding MBR orders by June 21, 1972; that as to those MBR orders which are not issued by that date, landlords ‘ ‘ who have filed R 23 and A 23 forms and were otherwise found to be eligible (by payment of the required filing fee; the appropriate certification for the maintenance of essential services; and the certification of violation removal or entry into a repair contract which has not been defaulted), will be authorized and permitted by the Respondents through the issuance of interim orders even where an Error Correction request is outstanding, to collect the maximum 7/2% rent increase retrocative to January 1,1972 and collectible in installments not to exceed an additional 7%% per month in accordance with Respondents’ Amendment No. 37 to the Rent and Eviction Regulations * * * subject to rebate of same should Respondents subsequently determine that the Petitioner actually was not entitled to any increase; that the maximum increase permissible pursuant to Local Law 30 was actually less than the said 7%%; or that the effective date of said increase was actually later than January 1, 1972 ”. The judgment also directed that landlords who receive interim orders deliver copies thereof to their tenants with their July, 1972 rent bill. Plaintiff’s landlord, defendant Region Holding Corp., was one of those who received an interim MBR order and, pursuant to the direction of the court, delivered a *972 copy of it to plaintiff with his July, 1972 rent bill. Prior to that date plaintiff’s rent was $176.16. The increase amounted to $26.26 per month, $13.13 representing the retroactive increase. Plaintiff paid $176.16 and on July 10, 1972 was served with a notice of petition and petition in a summary eviction proceeding for nonpayment of the $26.26 increase. Thus the instant action.
The theory of the action is that plaintiff is being deprived of his property without due process, since he is being required to pay an increased rental which, upon the issuance or refusal of a final MBE order to his landlord, he may not owe, either in the maximum amount (7%%) or at all. It appears that the Housing and Development Administration has issued final MBE orders for only 293,000 individual housing accommodations, leaving approximately 725,000 units. Clearly, the agency itself is at the root of the problem. It should be noted that the local law itself provided for an interim program from August, 1970 to December 31, 1971 which had as its objective providing immediate financial relief for landlords with inequitably low rents and eliminating disparities among rents for similar apartments. It is manifest, however, that the city council in passing the resolution did not envisage the administrator of the plan being buried in a bureaucratic quagmire and thus did not provide for further “ interim ” increases after January 1,1972. The Housing and Development Administration’s right to do so is derived solely from the judgment of the Supreme Court of New York County. While there does not appear any reason not to extend the agency’s time to issue final MBE orders, the central issue is whether landlords acting under an interim MBE order should be able to collect 15% increases from July, 1972 to January, 1973 and 7%% thereafter. This court is, of course, not bound by the New York County decision.
It should be noted that under the judgment of Mr. Justice Fino landlords had until June 14, 1972 to process their papers. The clear import, therefore, is that even if the actual corrective work on the building had not yet begun, or, if after that date, there was a default in the work contract, the landlord would nonetheless be entitled not only to a future increase but also to a retroactive increase. There is no way of determining on these papers how many landlords are in this position. In fact, this plaintiff alleges that his landlord did not comply at all. One thing is certain. This court finds it inconceivable to require tens of thousands of tenants to bear the cross of the city agency’s inability to conform to the requirements of the law. This is so even though the tenants are by the judgment and order per *973 mitted a rebate at some future time, since in the present posture of the administration’s progress form MBR orders may not be issued for all the units for a substantial period, perhaps years, during which time the tenant might have paid and moved and to obtain the rebate may necessitate legal action.
Since the impact of these issues is so great and widespread, this court is of the opinion that an immediate trial of this action would best serve the interest of all the parties, and accordingly the action is set down for trial on September 26,1972, subject to the discretion of the Justice presiding in Trial Term, Part I. The Administrator of the Housing and Development Administration shall answer the complaint, if he has not already done so, by September 15, 1972.
Under the circumstances the court will preserve the status quo by granting the motion for the preliminary injunction requested. Upon settlement of the order to be entered hereon, the court will accept suggestions as to the amount of a bond.
The cross motion is denied.